**GATES OIL CO. v. PRAIRIE OIL & GAS CO. et al.**

No. 20850. Opinion Filed May 10, 1932.

Rehearing Denied Oct. 18, 1932.

Earl Appleton Brown, for plaintiff in error.

T. J. Flannelly, Paul B. Mason, and Burford, Miley, Hoffman & Burford, for defendants in error.

CULLISON, J. Plaintiff instituted suit in the district court of Carter county, seeking to recover from defendants for certain crude oil delivered to defendants. The parties will be referred to as they appeared in the trial court.

The record discloses that plaintiff was the owner and operator of certain productive oil land located in Carter county, Okla., and that since production had been discovered on said land the same had been sold to defendants. The record further discloses that, in September, 1922, plaintiff discontinued delivering to defendants, but stored the oil produced from its wells in a 55,000 barrel storage tank and continued storing said oil until in April, 1923, at which time the production from said lease of plaintiff was delivered to defendants and plaintiff had continued to deliver said production to defendants after said date. The record further discloses that, in May, 1924, the plaintiff, through its officers, negotiated with defendants to sell the storage oil held in said storage tank, and that an agreement was entered into between plaintiff and defendants whereby defendants agreed to take said storage oil under the terms and conditions of the division order entered into between plaintiff and defendants in 1920. Defendants began to run the oil from said storage tank and had run a total of 30,721 barrels therefrom when they forwarded the first payment to plaintiff under the current market price of $1.45 per barrel. When plaintiff received the remittance for the storage oil and ascertained that defendants were deducting 3 per cent. on account of dirt and sediment in the same, plaintiff immediately protested to defendants and defendants ceased taking oil from said tank. The amount involved in the suit at bar is $1,169.39, the same being plaintiff's 7/8 of 921 barrels of crude oil which was deducted by defendants under the 3 per cent. clause in said division order.

The sole question for decision in this appeal, as stated by plaintiff, is:

"Did the clause in the division order wherein it was provided that 'the Prairie Oil & Gas Company shall deduct 3 per cent. for all oil received from wells into the pipe line for its account on account of dirt and sediment,' authorize it to deduct 3 per cent. on oil sold and run from a storage tank where oil had been in storage for many months under a division order which applied both to storage oil and to daily production from the wells on the lease?"

This necessitates our consideration of the division order under which the oil was run. The division order entered into and approved on December 13, 1920, provides that the Gates Oil Company, plaintiff herein, authorized the Prairie Oil & Gas Company to receive oil from said lease for purchase upon the following condition:

"* * * Third. The Prairie Oil & Gas Company shall deduct three per cent. from all oil received from wells into the pipe lines for its account on account of dirt and sediment, and, in addition, shall deduct one-twentieth of one per cent. for each degree of artificial heat above normal temperature to which said oil shall have been subjected, and oil shall be steamed when necessary to render it merchantable."

This division order was in force and effect at the time plaintiff and defendants negotiated for the sale of the storage oil in controversy. The record also discloses that plaintiff and defendants signed a new division order dated May 12th and approved May 24th, covering the storage oil in controversy. The only difference in said di-

vision order (exhibit A) and the first division order quoted (defendant's exhibit 1) is that the latter division order specified the oil stored in the storage tank. But said division order also contained the same provisions as contained in the former division order and especially the third paragraph set out above.

At the time plaintiff and defendants entered into negotiations relative to the sale of said storage oil, the record discloses the following testimony which we consider pertinent to the decision of this question. Mr. Danks, secretary-treasurer of plaintiff company, and the official who carried on the negotiations for the sale of said oil, testified as follows:

"Q. In that conversation you told Mr. Cook you wanted to sell him the oil in the storage tank? A. Yes, sir. Q. And you represented to him the oil, or the tanks, contained only the oil from the wells from which they had taken oil? A. Yes, sir; I presume so; those are the facts. Q. You explained to him it was the same oil he had taken from the lease? A. Those are the facts. Q. In that conversation Mr. Cook told you that they would buy this oil under this existing division order? A. He asked me if it was agreeable. Q. And you told him it was agreeable to run it under the existing division order? A. Yes, sir. Q. And under that division order they were running your then current production? A. Yes, sir. Q. You and Mr. Cook agreed if they run the oil, they would run it under the old division order, Exhibit 1? A. Yes, sir."

Mr. Cook, superintendent of the land department for defendants, testified as follows:

"Q. Just state as well as you remember the substance of the conversation between you and Mr. Danks? In reference to the oil. A. Along the line testified to by Mr. Danks, he called me and wanted to sell the storage oil, and we at that time were not making any new connections at all, we had discussed that before Mr. Danks called me, and I told him I had already talked to Mr. Meyers, and we would see if we could take it only on one condition, as a current run and pay for it on the daily gauge. Q. Handle it as any other oil on a division order? A. Yes, sir. Q. Did you have a division order signed by the Gates at that time? A. Yes, we were running the current oil at that time. Q. He agreed to that? A. Yes, sir."

With the testimony just outlined and the contract entered into between plaintiff and defendants before the trial court for consideration, said court found in part as follows:

"9. The oil delivered from tank No. 2 for account of Prairie Oil & Gas Company was oil received from wells No. 1, and upon the land described in the division order. Under the terms and conditions of the sale, the defendant, Prairie Oil & Gas Company, was entitled to deduct three per cent. on account of dirt and sediment.

"10. I conclude that full settlement has been made for all oil received under the terms and conditions of the contract of sale, and that plaintiff is not entitled to recover, and judgment will be entered for defendants."

We observe that the trial court found that defendants were entitled to deduct 3 per cent. of the oil delivered on account of dirt and sediment, and that plaintiff was not entitled to recover from defendants.

The question under consideration is the construction of the contract under which said oil was delivered. The record discloses that there was an existing contract between the parties to this suit at the time they commenced negotiations for the sale of the storage oil. The testimony discloses that the sale of storage oil was made under the condition that said oil be received by defendants under the same terms and conditions under which it was then taking oil from plaintiff's wells and that said oil would be paid for on the daily gauge, the same as defendants were paying for plaintiff's oil run from wells at that time.

Plaintiff contends that, since the division order referred to oil received from the wells, and that defendants were entitled to deduct 3 per cent. from the oil received from said wells, said provision of the contract would not be applicable to oil placed in storage tanks, because said oil placed in storage tanks had been placed therein for a considerable period of time and the sediment contained in the oil from the time it had run from the lease had settled and would not be in solution in said oils so as to entitle the defendants to deduct the 3 per cent. for said sediments.

As we view this case, this court will have to construe the contract entered into between the parties as disclosed by the record and not make a different contract for said parties. It is presumed that the parties to said contract made their own contract, and this court should not be expected to make a contract for them. Autry v. First Nat. Bank of Wynona, 131 Okla. 279, 269 P. 286.

The evidence in this case, as disclosed by the record, when considered in connection

with the contracts or division orders entered into between the parties, reveals that the contract between the parties to this suit was that said oil should be delivered under the same terms and conditions as oil was being run from the wells at the same date.

This court has held on numerous occasions that where the cause is tried to the court without a jury, and the court makes findings in said cause, said findings will not be reversed if there is competent evidence to support the same. Citizens' State Bank of Webbers Falls v. Hartsell, 149 Okla. 117, 299 P. 455.

Paragraph 9 of the findings of fact, as found by the trial court, is substantiated by the evidence in said cause, and since said finding of fact is substantiated by the evidence in said cause, this court will not reverse said finding, but will approve the same.

Under the findings of fact as made by the trial court, the court found that defendants had paid for oil in accordance with the terms and conditions of the contract and that there was no amount due and owing plaintiff. This finding being supported by the evidence in said cause, it therefore follows that plaintiff's cause of action should fail.

We find no reversible error in said record.

The judgment of the trial court is affirmed.

RILEY, SWINDALL, ANDREWS, Mc-NEILL, and KORNEGAY, JJ., concur. LESTER, C. J., CLARK, V. C. J., and HEFNER, J., absent.

Note.—See under (1) 6 R. C. L. 593; R. C. L. Perm. Supp. p. 1767; R. C. L. Pocket Part, title Contracts, § 13. (3) 2 R. C. L. 204, 206; R. C. L. Perm. Supp. p. 378; R. C. L. Pocket Part, title Appeal, § 173.